**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Lincoln National Life Insurance Company,

Plaintiff,

v.

Yoshi K Davis, et al.,

Defendants.

No. CV-24-02977-PHX-JZB

**ORDER**

Pending before the Court is Interpleader Defendant Yoshi K. Davis's ("Defendant Davis") "Motion for Summary Judgment Against Defendants Joann E. Fawcett and Bruce R. Fawcett" ("Motion for Summary Judgment").[1] (Doc. 51.) Interpleader Defendants Joann E. Fawcett and Bruce R. Fawcett (the "Fawcett Defendants") have not responded to the Motion, and the time for doing so has expired. *See* (doc. 54.) Given that the Fawcett Defendants have not carried their burden in establishing that Sydney B. Fawcett's (the "Decedent") designation of Defendant Davis as the sole primary beneficiary was the product of undue influence, the Court finds Defendant Davis entitled to Judgment as a matter of law. Thus, the Court shall grant Defendant Davis's Motion for Summary Judgment.

## I. BACKGROUND.

### A. Factual Background.

The following facts—given the Fawcett Defendants' failure to respond—are

[1] All parties have consented to magistrate judge jurisdiction in this action. (Doc. 20.)

undisputed or not subject to reasonable dispute.

This action pertains to the Decedent's Lincoln National Life Insurance Co. life insurance policy no. 000645894. (Doc. 52 at ¶ 1.) This life insurance policy was in force at the time of the Decedent's death on July 20, 2024. (*Id.* at ¶¶ 1, 9.) At the time of the Decedent's passing, the policy's death benefit, amounting to $251,576.50, became payable to the proper primary beneficiary. (*Id.* at ¶ 2.)

On July 17, 2012, the Decedent designated the Fawcett Trust as the sole primary beneficiary of the policy. (*Id.* at ¶ 3.) Thereafter, the Decedent and Defendant Davis "participated in a religious marriage ceremony on December 20, 2014[.]" (*Id.* at ¶ 4.) While the Decedent and Defendant Davis were issued a certificate from the Congregational Church of Sun City, *see* (doc. 52-2), their marriage was not a legal Arizona marriage given their failure to fill out the requisite state paperwork. *See* (doc. 52-4 at 30.) In any event, the Decedent and Defendant Davis "lived together and held themselves out as husband and wife for approximately ten years." (Doc. 52 at ¶ 4.)

Following their religious marriage, the decedent designated Defendant Davis as a beneficiary of his individual retirement account. (*Id.* at ¶ 7.) On July 6, 2022, a restatement of the Fawcett Trust gave Defendant Davis one-third interest in the Trust. (Doc. 52-4 at 14.) Thereafter, on September 28, 2023, the Decedent modified his estate so that his children—*i.e.*, the Fawcett Defendants—would receive the whole Fawcett Trust and Defendant Davis would receive his life insurance policy proceeds. (*Id.* at 26.)

On January 12, 2024, the Decedent designated Defendant Davis as the sole primary beneficiary of his life insurance policy, with the Fawcett Defendants being named as contingent beneficiaries. (Doc. 52 at ¶ 7.) The Decedent's change of his life insurance beneficiary designation was confirmed by the Lincoln National Life Insurance Co. on January 31, 2024. (*Id.*)

**B. Procedural Background**.

The pertinent procedural background of this case is as follows. On October 29, 2024, Plaintiff Lincoln National Life Insurance Co. filed the instant Rule 22 interpleader

action. (Doc. 1.) On February 12, 2025, Plaintiff Lincoln National Life Insurance Co. filed an "Unopposed Motion to Deposit Funds and be Dismissed . . . ," (doc. 17), which was granted on April 15, 2025, following the Defendants' Answers and a case management conference conducted before the Court. (Doc. 28.) The interpleader funds were subsequently deposited in the Court's registry on April 23, 2025. (Doc. 29.)

Following discovery, Defendant Davis moved for Summary Judgment on August 13, 2026. (Doc. 51.) Given this, the Fawcett Defendants'—who at the time were represented by counsel—original deadline to file a response was September 14, 2026. *Compare* (*id.*) *with* Fed. R. Civ. P. 6(a)(1)(C). On September 14, 2026, the Fawcett Defendant's then counsel filed a Motion to Withdraw as Counsel of Record Without Client Consent, wherein he requested a 30-day extension of time for the Fawcett Defendants to file a response to Defendant Davis's Motion for Summary Judgment. (Doc. 53.) The Court granted the request to withdraw and request for a 30-day extension on September 16, 2026. (Doc. 54.) In the September 16, 2026 Order, the Court—recognizing that the Fawcett Defendants were no longer represented by counsel—issued a *Rand*-type warning order to the Fawcett Defendants. (*Id.*)

The Fawcett Defendants' deadline to respond to Defendant Davis's Motion for Summary Judgment was October 16, 2026. (*Id.*) The Fawcett Defendants did not respond to the Motion for Summary Judgment by the October 16, 2026 deadline. Nor have they responded to the Motion to date.

## II. LEGAL STANDARD.

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court views the evidence in the light most favorable to the non-moving party to determine if there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if

a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[s]ummary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125 (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 77 U.S. at 248. Evidence that "is merely colorable . . . or is not significantly probative" will not preclude summary judgment. *Id.* at 249.

## III. DISCUSSION.

This Rule 22 interpleader action is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* (doc. 1 at 2.) Thus, this Court shall apply the applicable state substantive law—*i.e.*, Arizona state law. *See Gasperini v. Ctr. for Humans.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Under Arizona state law, a beneficiary designation—such as the designation implicated in this action—is a "governing instrument." *See* A.R.S. § 14-1201(28). As such, there is "a rebuttable presumption" under Arizona state law "that [the] person who executes a governing instrument is presumed to have capacity to execute the governing instrument and to have done so free from undue influence and duress." *Id.* § 14-2712(B); *Thrivent Fin.*

*v. Bressler*, No. CV-16-08135-PCT-BSB, 2017 U.S. Dist. LEXIS 38766, at *8 (D. Ariz. Mar. 15, 2017) ("Arizona law presumes that a person has the requisite mental capacity to exercise their contractual rights, including the right to make beneficiary designation changes."). Thus, the party challenging "the validity of the governing instrument has the burden of establishing the invalidity of that governing instrument by a preponderance of the evidence." A.R.S. § 14-2712(D). However, "an inverse presumption arises that a [governing instrument] was the product of undue influence if the alleged influencer either (1) had a confidential relationship with the Decedent, was active in procuring the creation and execution of the deed, and is a principal beneficiary of the deed, or (2) prepared the deed and is a principal beneficiary of the deed." *Rosenberg v. Sanders*, 539 P.3d 120, 127 (Ariz. 2023) (citing A.R.S. § 14-2712(E)(1)–(2)).

Arizona state courts have held that "the marital relationship is not one of the confidential relationships giving rise to the presumption of undue influence." *In re Estate of Vermeersch*, 506 P.2d 256, 260 (Ariz. 1973). Defendant Davis relying upon this fact, avers that her relationship with the Decedent was a "marital relationship" that does not give rise to the presumption of undue influence. (Doc. 51 at 8.) The Court agrees.

Here, Defendant Davis's and the Decedent's religious marriage—while not a legal marriage under Arizona state law given their failure to comply with the dictates of A.R.S. § 25-111(B)—was tantamount to a legal marriage. Moreover, their religious marriage does not appear to fall under the banner of a confidential relationship under Arizona law given that "the phrase confidential relationship refers to the testator's doctor, guardian, religious advisor, partner, employer, landlord, business associate, etc." *Parrisella v. Fotopulos*, 522 P.2d 1081, 1083 (1974) (citation omitted).

And, in any event, even if Defendant Davis was in a confidential relationship with the Decedent, she was not—as she opines—active in procuring the beneficiary change. S*ee* (doc. 51 at 8.) For the reverse presumption to apply under the first *Rosenberg* branch, Defendant Davis would need to be: (1) in a confidential relationship with the Decedent; (2) ***actively seeking the change of the beneficiary designation***; and (3) be the principal

beneficiary of the designation. *See Rosenberg*, 539 P.3d at 127 (emphasis added). Here, even if the first and third factors are established, the facts present in this case do not show that Defendant Davis actively pressed for the Decedent to change the beneficiary designation in her favor. Given this, the reverse presumption does not arise in this case, meaning that the burden of establishing undue influence remains upon the Fawcett Defendants. *See In re Estate of Pitt*, 356 P.2d 408, 411 (Ariz. 1960) (noting that "the opportunity to exercise such influence over deceased is not sufficient to establish undue influence and to invalidate" a governing instrument).

"In Arizona, a person unduly influences a testator when the person, 'through her power over the mind' of the testator, 'makes the latter's desires conform to her own, thereby overmastering the volition' of the testator." *Frederick v. Frederick*, No. CV-17-00368-PHX-JJT, 2018 U.S. Dist. LEXIS 137373, at *11–12 (D. Ariz. Aug. 13, 2018) (cleaned up) (quoting *In re Estate of McCauley*, 415 P.2d 431, 433 (Ariz. 1966)). To determine whether a governing instrument has been precured through undue influence, Arizona state courts consider the following eight factors:

> [(1)] Whether the alleged influencer has made fraudulent representations to the testat[or]; [(2)] whether the execution of the [governing instrument] was the product of hasty action; [(3)] whether the execution of the [governing instrument] was concealed from others; [(4)] whether the person benefited by the [governing instrument] was active in securing its drafting and execution; [(5)] whether the [governing instrument] as drawn was consistent or inconsistent with prior declarations and plannings of the testat[or]; [(6)] whether the [governing instrument] was reasonable rather than unnatural in view of the testat[or's] circumstances, attitudes, and family; [(7)] whether the testat[or] was a person susceptible to undue influence; and [(8)] whether the testat[or] and the beneficiary have been in a confidential relationship.

*In re Estate of McCauley*, 415 P.2d at 433–34.

"These eight factors that have been treated as significant indicia of the presence or absence of [undue] influence." *Rosenberg*, 539 P.3d at 125 (citation omitted).

The Fawcett Defendants, based upon the undisputed facts present in this action and considering their failure to respond to the instant Motion, fail to carry their burden under

the eight undue influence factors. Turning to the first factor, there is a dearth of evidence in the record evincing that Defendant Davis made any fraudulent representations to the Decedent. *See* (doc. 52 at ¶¶ 15–17.) As to the second factor, the undisputed evidence does not establish that the change of beneficiary designation was the product of hasty action as this change appears to be one of many estate planning changes made by the Decedent over the course of a decade—some changes favoring Defendant Davis and some not. *See* (*id.* at ¶¶ 6–13.) Turning to the third factor, the undisputed facts establish that the Decedent notified his estate-planning attorney prior to making the beneficiary designation, showing that the execution of this governing agreement was not made in secret. *See* (doc. 52-4 at 25–26.)

Regarding the fourth factor, the undisputed evidence does not establish that Defendant Davis was active in securing the beneficiary designation's execution. As the Decedent's estate-planning attorney testified, it did not appear that the Decedent ever acted under pressure against his wishes. *See* (*id.* at 32.) Moreover, when Defendant Davis appeared with the Decedent at an estate planning meeting on September 28, 2023, she neither spoke for the decedent nor directed the instructions for his estate, *see* (*id.* at 28–29), providing circumstantial evidence that she was not actively pressing for the beneficiary designation here.

Turning to the fifth factor, it does not appear that this designation was inconsistent with the Decedent's prior declarations and machinations for his estate considering that he decided that his trust should go to his children—*i.e.*, the Fawcett Defendants—and the life insurance would go to Defendant Davis. *See* (*id.* at 26) ("At the meeting Syd directed that the trust should go to his children, the life insurance to go to Yoshi."). This fact is also relevant to the sixth factor, because it shows that changing the beneficiary designation was reasonable given the Decedent's intent to equitably split his estate between his children and Defendant Davis. As to the seventh factor, the undisputed evidence does not establish that the Decedent was susceptible to undue influence. *See* (doc. 52 at ¶¶ 12–17.) Finally, as to the eighth factor, the Court, for the reasons stated above, does not find that Defendant

Davis and the Decedent were in a confidential relationship.

Given the Fawcett Defendants' failure to respond to Defendant Davis's Motion for Summary Judgment, they have failed to rebut any of these findings. Moreover, the only assertions contained within their prior filings as to the undue influence factors amount to "[m]ere suspicion, innuendo, insinuation and speculation [which] are no substitute for evidence." *Rosenberg*, 256 Ariz. at 369.

## IV. CONCLUSION.

In conclusion, a rational trier of fact considering the instant record would find that Defendant Davis did not unduly influence the Decedent. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Therefore, Defendant Davis is entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendant Davis's Motion for Summary Judgment (doc. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Davis is adjudged as the sole primary beneficiary the Decedent's life insurance policy no. 000645894.

**IT IS FURTHER ORDERED** that Defendant Davis is awarded the interpleader funds amounting to $251,576.50, and any accrued interest, that has been deposited in the Court's registry. The Clerk of Court is kindly directed to disburse the interpleader funds amounting to $251,576.50, and any accrued interest, to Defendant Yoshi K. Davis.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in Defendant Davis's favor and close this case.

Dated this 27th day of October, 2026.

Honorable John Z. Boyle
United States Magistrate Judge